1

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10   MCMILLAN DATA
     COMMUNICATIONS, INC.,                    Case No. 14-cv-03127 JD (NC)
11
              Plaintiff,                      **REPORT AND**
12                                            **RECOMMENDATION TO GRANT**
          v.                                  **MOTION FOR DEFAULT**
13                                            **JUDGMENT**
     AMERICOM AUTOMATION
14   SERVICES, INC., TRACI PELAYO,            Re: Dkt. No. 27
     JUSTIN L. PELAYO
15
              Defendants.
16

17

18        Plaintiff McMillan Data Communications, Inc. moves for entry of default judgment

19   against defendants AmeriCom Automation Services, Inc., Traci Pelayo, and Justin Pelayo

20   in this breach-of-contract action.  McMillan alleges that AmeriCom hired McMillan to do

21   construction work, but AmeriCom failed to pay for the services rendered.  McMillan

22   further alleges that Traci Pelayo and Justin Pelayo breached their promises to pay

23   AmeriCom's debt.

24        Because McMillan has shown that AmeriCom, Traci Pelayo, and Justin Pelayo

25   breached agreements with McMillan, this Court recommends to the district court that

26   McMillan's motion for default judgment be GRANTED as to McMillan's claims for

27   breach-of-contract, common counts (monies due, account stated, quantum meruit), breach

28   of guarantee, and breach of promissory note, and hold defendants jointly and severally

     Case No. 14-cv-03127 JD (NC)

United States District Court
Northern District of California

liable for amounts owed.  Specifically, the Court recommends that judgment be entered in McMillan's favor in the amount of $389,930.39.

## I.   BACKGROUND

### A.   The Parties

Plaintiff McMillan Data Communications is a California corporation that executes construction contracts.  Dkt. No. 1 at ¶¶ 1-2.  Defendant AmeriCom Automation Services, Inc. is a New Mexico corporation doing business in San Francisco, California.  *Id.* at ¶ 3.  Defendant Traci Pelayo is the Chief Financial Officer of AmeriCom and a New Mexico citizen.  *Id.* at ¶ 5.  Defendant Justin Pelayo is the President and CEO of AmeriCom and a New Mexico citizen.  *Id.* at ¶ 4.

### B.   Alleged Facts

McMillan executed a business contract with AmeriCom on February 21, 2013.  *Id.* at ¶ 14.  Under this subcontract agreement, McMillan agreed to "supply labor, equipment, materials, and services" and complete work that AmeriCom directed McMillan to perform on a federal public works construction project located at Pacific Rim Region, 50 United Nations Plaza, San Francisco, California, in exchange for payment from AmeriCom.  *Id.*

On February 22, 2013, AmeriCom CFO Traci Pelayo executed and delivered a "written personal and continuing guarantee for the benefit" of McMillan.  *Id.* at ¶ 39.  Under this personal guarantee, McMillan alleges that Traci Pelayo and defendants "jointly, severally, and individually guaranteed and promised to pay McMillan for all indebtedness of the AmeriCom Defendants to McMillan."  *Id.* at ¶ 39.  This guarantee further specified that AmeriCom would pay McMillan within 30 days from the date of the invoices McMillan submitted to AmeriCom for work performed, and that a 1.5% per month fee would be applied to outstanding balances, computed on a daily basis.  *Id.* at 31 (personal guarantee agreement).

McMillan states that it timely submitted invoices demanding payment for work performed, totaling $422,872.75.  *Id.* at ¶ 17.  According to McMillan, payments received from AmeriCom, or on AmeriCom's behalf, total only $114,413.35, leaving an

United States District Court
Northern District of California

1  outstanding amount due of at least $308,459.40.  Dkt. No. 27-2 at ¶ 7.  Despite demands

2  for payment, neither AmeriCom nor Traci Pelayo has paid the $308.459.40 sum.  Dkt. No.

3  1 at ¶ 41.

4  On September 5, 2013, AmeriCom president Justin L. Pelayo and AmeriCom

5  entered into and executed a written promissory note to McMillan in the principle amount

6  of $301,873.25, with interest.  *Id.* at ¶ 43.  This promissory note provided that AmeriCom

7  and Justin Pelayo would pay McMillan monthly installments of $9,176.93 each.  *Id.* at

8  ¶ 44.  Under this promissory note, AmeriCom and Justin Pelayo "jointly and severally"

9  promised to pay not just the $301,873.25 principal, but also any "unpaid sums for which

10  AmeriCom may become liable to McMillan, plus interest on the unpaid balance at six

11  percent (6%) per annum[.]"  *Id.* at 33 (promissory note).  Since the promissory note's

12  execution, however, neither AmeriCom nor Justin Pelayo has made payments to

13  McMillan.  *Id.* at ¶ 46.

14  McMillan alleges that while it properly performed its work under the AmeriCom

15  subcontract and timely submitted invoices to AmeriCom, defendants AmeriCom, Traci

16  Pelayo, and Justin Pelayo breached their respective contracts by failing to pay the balance

17  owed to McMillan according to the terms of their agreements.  *Id.* at 9-10.

18  **C.   Procedural History**

19  McMillan filed its complaint on July 10, 2014, against AmeriCom, Traci Pelayo,

20  and Justin Pelayo.  *Id.*  The complaint brings claims for breach of contract, common counts

21  (monies due, account stated, quantum meruit), breach of personal guarantee, and breach of

22  promissory note.  *Id.*

23  Because none of the defendants answered or responded to the complaint, McMillan

24  filed a motion for entry of default, which the Clerk entered.  Dkt. Nos. 17 (as to

25  AmeriCom), 23 (as to Traci Pelayo and Justin Pelayo).  McMillan then moved for default

26  judgment.  Dkt. No. 27.  On April 17, 2015, the district court referred McMillan's motion

27  to this Court.  Dkt. No. 35.  After reviewing the motion, this Court ordered McMillan to

28  show cause why it was entitled to triple the original amount of debt owed, double the

1  amount of attorney's fees incurred, and why Justin Pelayo's and AmeriCom's promissory

2  note is not a novation.  Dkt. No. 36.

3        McMillan filed a response to the order to show cause, clarifying that it does not

4  seek a multiple of its damages or attorney's fees incurred; rather, McMillan states it "is

5  only entitled to recover no more than McMillan's compensable damages."  Dkt. No. 37 at

6  1-2.  Specifically, McMillan states that AmeriCom and Traci Pelayo (as a result of the

7  personal guarantee) became jointly and severally liable to McMillan for the amount owed

8  under the subcontract agreement, and "AmeriCom and Justin Pelayo, as co-signors on the

9  Promissory Note, separately became jointly and severally liable for the principal amount of

10  the Promissory Note, plus interest at 6% per annum and attorney's fees."  *Id.*

11        Put differently, "McMillan's position is that it is entitled to recover *a maximum* of

12  $389,930.39" from AmeriCom, with Traci Pelayo jointly and severally liable to the extent

13  of $378,884.48 (as a function of the personal guarantee), and Justin Pelayo jointly and

14  severally liable to the extent of $340,851.82 (as a function of the promissory note).  *Id.* at

15  2.

16  **II.   LEGAL STANDARD**

17        A default may be entered against a party who fails to plead or otherwise defend an

18  action and against whom a judgment for affirmative relief is sought.  Fed. R. Civ. P. 55(a).

19  After entry of default, a court has discretion to grant default judgment on the merits of the

20  case.  Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

21  Federal Rule of Civil Procedure 55(b)(2) provides that a party must apply to the Court for

22  default judgment.  "If the party against whom a default judgment is sought has appeared

23  personally or by a representative, that party or its representative must be served with

24  written notice of the application at least 7 days before the hearing."  Fed. R. Civ. P.

25  55(b)(2).  "No party in default is entitled to 55(b)(2) notice unless he has 'appeared' in the

26  action."  *Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366, 368 (9th Cir. 1977).

27        At the default judgment stage, the factual allegations of the complaint, except those

28  concerning damages, "together with other competent evidence submitted" is deemed

United States District Court
Northern District of California

admitted by the non-responding parties. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1000 (N.D. Cal. 2001); *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (quotation marks omitted)). Therefore, "*necessary* facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)) (emphasis added); *accord DIRECTV*, 503 F.3d at 854.

In deciding whether to grant default judgment, the Court may then consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III.  DISCUSSION

### A.   Jurisdiction

In considering whether to enter a default judgment, a district court first must determine whether it has jurisdiction over the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (considering subject matter jurisdiction on a 12(b)(1) motion).

#### 1.  Subject Matter Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(3), which gives federal district courts "original jurisdiction of all civil actions where the matter in

United States District Court
Northern District of California

1  controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

2  between . . . citizens of different States and in which citizens or subjects of a foreign state

3  are additional parties."  With McMillan claiming $389,930.39 total in damages, the

4  amount in controversy requirement is met.

5      There is also complete diversity.  McMillan is a California corporation with its

6  principal place of business in California.  Dkt. No. 1 at ¶ 1.  AmeriCom is a corporation

7  "organized and existing under the laws of the State of New Mexico" and a citizen of New

8  Mexico.  Dkt. No. 1 at ¶ 3.  Traci Pelayo and Justin Pelayo are citizens of the State of New

9  Mexico.  Dkt. No. 1 at ¶¶ 4-5.

10     Because all defendants are diverse from plaintiff and the amount in controversy

11  requirement is satisfied, the Court finds that it has diversity jurisdiction.

12          **2.  Personal Jurisdiction**

13     "Without a proper basis for [personal] jurisdiction, or in the absence of proper

14  service of process, the district court has no power to render any judgment against the

15  defendant's person or property unless the defendant has consented to jurisdiction or

16  waived the lack of process."  *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

17          **a.  Basis for Personal Jurisdiction**

18     To enter default judgment, the Court must also have a basis for the exercise of

19  personal jurisdiction over the defendants in default.  *In re Tuli*, 172 F.3d at 712.

20  Traditional bases for conferring a court with personal jurisdiction include a defendant's

21  consent to jurisdiction, personal service of the defendant within the forum state, or a

22  defendant's citizenship or domicile in the forum state.  *J. McIntyre Mach., Ltd. v. Nicastro*,

23  131 S. Ct. 2780, 2787 (2011).  Absent one of the traditional bases for jurisdiction, the Due

24  Process Clause requires that the defendant have "certain minimum contacts with the forum

25  'such that the maintenance of the suit does not offend traditional notions of fair play and

26  substantial justice.'"  *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (citations

27  and internal quotation marks omitted).

28     In determining whether the exercise of personal jurisdiction over a nonresident

United States District Court
Northern District of California

1  defendant is proper, a district court must apply the law of the state in which it sits where,

2  as here, there is no applicable federal statute governing personal jurisdiction.  *Panavision*

3  *Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  District courts in California

4  may exercise personal jurisdiction over a nonresident defendant to the extent permitted by

5  the Due Process Clause of the Constitution. Cal. Code. Civ. P. § 410.10.

6  The party seeking to invoke jurisdiction has the burden of establishing that

7  jurisdiction is proper.  *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984).

8  That party need only make a prima facie showing of jurisdictional facts when the court

9  does not conduct an evidentiary hearing regarding personal jurisdiction.  *Fiore v. Walden*,

10  657 F.3d 838, 846 (9th Cir. 2011) (citation omitted).  However, "mere 'bare bones'

11  assertions of minimum contacts with the forum or legal conclusions unsupported by

12  specific factual allegations will not satisfy a plaintiff's pleading burden."  *Fiore*, 657 F.3d

13  at 846-47 (citation omitted).

14  Personal jurisdiction may be founded on either general jurisdiction or specific

15  jurisdiction.

### i.    General Jurisdiction

17  General jurisdiction exists when a nonresident defendant is domiciled in the forum

18  state or his activities in the forum are "substantial" or "continuous and systematic."

19  *Panavision*, 141 F.3d at 1320 (internal quotation marks omitted).  To determine whether a

20  nonresident defendant's contacts are sufficiently substantial or continuous and systematic,

21  a court must consider their "longevity, continuity, volume, economic impact, physical

22  presence, and integration into the state's regulatory or economic markets."  *Mavrix Photo,*

23  *Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011) (citations and internal

24  quotation marks omitted).

25  Here, McMillan does not contend that the Court has general jurisdiction over

26  defendants and alleges no facts to establish that the defendants' contacts with California

27  are substantial or continuous and systematic.  Therefore, the exercise of general personal

28  jurisdiction over defendants is unjustified.

### ii.    Specific Jurisdiction

Yet when the nonresident defendant's contacts with the forum are insufficiently pervasive to subject him to general personal jurisdiction, the court must ask whether the "nature and quality" of his contacts are sufficient to exercise specific personal jurisdiction over him. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977). A court may exercise specific personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two of these three elements; if the plaintiff fails to establish either of them, specific personal jurisdiction over the nonresident defendant is improper. *Id.* (citations omitted). If the plaintiff satisfies the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (citations and internal quotation marks omitted).

The first prong of the specific jurisdiction test is satisfied by either "purposeful availment" or "purposeful direction" by the defendant. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (noting that the first step "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof."). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted).

Under a purposeful availment analysis, "[a] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of

Case No. 14-cv-03127 JD (NC)                    8

evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* By taking such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (internal quotation marks and citation omitted). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. . . ." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted).

When the exercise of personal jurisdiction over a defendant is based on the execution or performance of a contract, the court must "use a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.* at 479 (internal quotation marks and citation omitted). Accordingly, to determine whether the purposeful availment requirement is met, the court must look to the contract's "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing. . . ." *Id.*

Here, turning to defendants' minimum contacts, the purposeful availment requirement is met for all of McMillan's claims. In February 2013, AmeriCom executed a subcontract agreement with McMillan to perform work on a construction project located in California. *See, e.g.*, Dkt. No. 1 at 16 (invoice identifying the project's address as "50 UNITED NATIONS PL" located in San Francisco). The agreement specifically identified McMillan's principal place of business as located in San Francisco, California. *Id.* at 12. As to the invoices that McMillan submitted to AmeriCom demanding payment for work performed under the subcontract, nearly all of them list "450 Golden Gate, San Francisco, CA 94102" as the shipping address. *Id.* at 17-29. In addition to the subcontract agreement, AmeriCom CFO Traci Pelayo also entered into a Credit Application for a Business Account, by which she personally agreed to guarantee and promised to pay AmeriCom's obligations to McMillan for the work completed in California. *Id.* at 31.

Case No. 14-cv-03127 JD (NC)          9

1  Seven months after the subcontract agreement's formation, CEO Justin Pelayo and

2  AmeriCom executed a promissory note to pay McMillan for the work completed on the

3  San Francisco project in monthly installments.  This promissory note specifically states

4  that it must be construed according to and governed by California state law.  *Id.* at 35.

5  According to McMillan, it did receive payments from AmeriCom of $114,413.35.  Dkt.

6  No. 27-2 at ¶ 7.

7       To summarize, in executing agreements related to a project located in California

8  with a California-based entity, and agreeing to make continual payments to a California-

9  based entity on the basis of submitted invoices concerning materials shipped to California

10  and labor performed in California, defendants purposefully availed themselves of the

11  privileges of doing business in this forum state.  *See JBR, Inc. v. Cafe Don Paco, Inc.*, No.

12  12-cv-02377 NC, 2014 U.S. Dist. LEXIS 142866, at *19 (N.D. Cal. Aug. 25, 2014)

13  ("Negotiating three loan agreements with a California corporation, having continuing

14  obligations to make payments on these loans in the form of coffee shipments to California,

15  and the choice of law provision are sufficient to show that [defendant] purposefully availed

16  itself of the privilege of conducting activities in California.").

17       McMillan's claims also arise out of the forum-related activities of nonresident

18  defendants, AmeriCom, Traci Pelayo, and Justin Pelayo.  *See McGee v. Int'l Life Ins. Co.*,

19  355 U.S. 220, 223 (1957) (holding that "the Due Process Clause did not preclude the

20  California court from entering a judgment binding on [the defendant]" because "the suit

21  was based on a contract which had substantial connection with that State").  McMillan's

22  claims arise out of defendants' failure to fully repay McMillan for services performed on a

23  California project. Dkt. No. 1 at ¶¶ 13-47.  Given the nature of the relationship between

24  each of three defendants and McMillan, the Court finds that personal jurisdiction over

25  defendants AmeriCom, Traci Pelayo, and Justin Pelayo is reasonable.

26            **b.   Service of Process**

27       Personal jurisdiction also requires notice that is "reasonably calculated, under all the

28  circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Federal Rule of Civil Procedure 4]." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs.*, Inc., 840 F.2d 685, 688 (9th Cir. 1988).

Here, the Court finds that defendants AmeriCom, Traci Pelayo, and Justin Pelayo were properly served with a summons and complaint. Dkt. Nos. 16 (as to AmeriCom), 22 (as to Traci Pelayo and Justin Pelayo). Defendants have failed to plead or otherwise defend themselves in this action and therefore judgment may be entered against them. *See* Fed. R. Civ. P. 55(a).

### 3. Venue

"[V]enue, like jurisdiction over the person, may be waived. A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Given that all defendants have been properly served, default was entered as to all defendants, and they have failed to object to venue in the Northern District, venue has been waived.

### B.   Default Judgment

The seven *Eitel* factors weigh in favor of entering default judgment as to all claims against AmeriCom, Traci Pelayo, and Justin Pelayo. The Court examines each of these factors below.

### 1. Prejudice to McMillan

The first factor the Court considers is the possibility of prejudice to the plaintiff if default judgment is not granted. *Eitel*, 782 F.2d at 1471. If plaintiff would be without a remedy if default judgment is denied, this factor weighs in favor of granting default judgment. *See, e.g., IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (finding that plaintiffs in copyright infringement action would be prejudiced because they would be without recourse to stop defendant's infringement or to recover for the harm and

United States District Court
Northern District of California

1   damages suffered).

2        Here, McMillan has spent the past year trying to resolve this matter in court.  Dkt.

3   No. 1.  If default judgment is not granted, McMillan would have no other recourse to

4   recover for the harm defendants have caused them.  As such, McMillan will suffer

5   prejudice if default judgment is not granted.

6        Thus, this Court finds that this factor favors granting default judgment.

7                    **2.  Merits and Sufficiency of the Claim**

8        The second and third *Eitel* factors focus on the merits of plaintiff's substantive

9   claims and the sufficiency of the complaint.  *Eitel*, 782 F.2d at 1471.  "Together, these

10  factors require that plaintiff assert claims upon which it may recover."  *IO Grp.*, 708 F.

11  Supp. 2d at 989 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494,

12  500 (C.D. Cal. 2003)).  In this procedural posture, a court must take "the well-pleaded

13  factual allegations" in the complaint as true; however, the "defendant is not held to admit

14  facts that are not well-pleaded or to admit conclusions of law."  *DIRECTV*, 503 F.3d at 854

15  (internal quotation marks and citation omitted).  "[N]ecessary facts not contained in the

16  pleadings, and claims which are legally insufficient, are not established by default."

17  *Cripps*, 980 F.2d at 1267 (citation omitted).  Here, McMillan moves for default judgment

18  on three separate breach-of-contract claims against defendants as well as common counts

19  claims against AmeriCom.

20       As a threshold matter, this Court finds that, under California choice of law rules,

21  contracting parties may agree to what law controlled "unless the choice is contrary to a

22  fundamental interest of a state with a materially greater interest." *Cripps*, 980 F.2d at 1267;

23  *see Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 313 (9th Cir. 1996) ("A district court

24  sitting in diversity generally must apply the choice of law rules for the state in which it

25  sits.").

26       Here, the parties specifically chose to apply New Mexico law to the AmeriCom

27  subcontract agreement, Dkt. No. 1 at 14, and California law to the promissory note, *id.* at

28  35.  Thus, this Court will apply New Mexico law to McMillan's breach-of-contract claim

United States District Court
Northern District of California

as to the AmeriCom subcontract agreement.  For all other claims, this Court will apply California law.

### a.   Breach of Contract against AmeriCom

The elements of a breach of contract under New Mexico law are existence of the contract, breach of the contract, causation, and damages.  *See Abreu v. N.M. Children, Yough and Families Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011) (citing *Camino Real Mobile Home Park P'ship v. Wolfe*, 119 N.M. 436, 442 (1995)).

Here, McMillan has alleged facts sufficient to establish a breach-of-contract claim against AmeriCom.  McMillan alleges that AmeriCom breached an agreement to provide payment for construction services.  Dkt. No. 1 at ¶¶ 13-20.  The terms of the contract stated that McMillan would perform construction work and send regular invoices to AmeriCom, and that AmeriCom would pay the amounts owed.  *Id.*  McMillan alleges that it performed as required under the contract by providing all necessary labor, materials, equipment, and services under the subcontractor agreement and timely submitting invoices demanding payment for work performed.  *Id.* at ¶¶ 16-17.  According to the complaint, AmeriCom breached that contract by failing to pay McMillan as promised, resulting in damages to McMillan of at least $308,459.40  *Id.*

Accepting all factual allegations as true, McMillan has adequately demonstrated a substantial likelihood of success on the merits of its breach-of-contract claim.

### b.   Common Counts against AmeriCom

In addition to McMillan's breach-of-contract claim, the facts also support McMillan's actions for monies due, account stated, and quantum meruit against AmeriCom.

### i.   Monies Due

The elements of an action for money or goods had and received are "(1) a statement of indebtedness of a certain sum, (2) the consideration made by the plaintiff, and (3) nonpayment of the debt."  *Don Paco*, 2014 U.S. Dist. LEXIS 142866, at *19 (citing *First Interstate Bank v. State of California*, 197 Cal. App. 3d 627, 635 (1987)).  The Court finds

United States District Court
Northern District of California

that the same factual allegations that support McMillan's breach of contract claim, accepted as true, also support a monies-due claim.  *See Bank of the W. v. RMA Lumber Inc.*, No. 07-cv-06469 JSW, 2008 WL 2474650, at *4 (N.D. Cal. June 17, 2008) (finding allegations that established a breach of contract claim also established a claim for money due).  Thus McMillan has established a likelihood of success on the merits on the monies due claim.

### ii.  Account Stated

"An account stated is an agreement, based on prior transactions between the parties, that the items of an account are true and that the balance struck is due and owing." *Luxul Tech., Inc. v. Nectarlux, LLC*, No. 14-cv-03656 LHK, 2015 U.S. Dist. LEXIS 8802, at *33 (N.D. Cal. Jan. 26, 2015) (citing *Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745 (1987)).  The three essential elements of an account-stated claim include: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due." *Id.* (citing *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600 (1969)).

Here, McMillan alleges that AmeriCom, being indebted to McMillan upon accounts stated between them, promised to pay McMillan on the basis of the amounts listed on McMillan's submitted invoices. Dkt. No. 1 at ¶ 29, 12 ("Section 3. Price and Payment Terms").  McMillan further alleges that AmeriCom received the invoices but failed to satisfy the outstanding invoices and pay amounts due.  *Id.* at ¶¶ 17, 30.  Taking McMillan's factual allegations as true, the Court concludes that McMillan will likely succeed on the merits of this claim.

### iii.  Quantum Meruit

"Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *Chunghwa Telecom Global, Inc. v. Medcom, LLC*, 13-cv-02104 HRL, 2013

United States District Court
Northern District of California

1   U.S. Dist. LEXIS 149165, 20-21 (N.D. Cal. Oct. 16, 2013) (citing *In re De Laurentiis*

2   *Entertainment Group, Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992)).

3          Here, McMillan alleges that it rendered services (e.g., labor, goods, and materials)

4   that benefited AmeriCom, who would indeed be unjustly enriched if McMillan was not

5   compensated the over $300,000 it is owed.  Dkt. No. 1 at ¶ 26-27.  Thus McMillan has

6   established a likelihood of success on the merits on this quantum-meruit claim.

### c.   Breach of Guarantee against Traci Pelayo

7

8          In California, a complaint for breach of guarantee requires: (1) the existence of a

9   contract; (2) plaintiff's performance or excuse for non-performance under the contract; (3)

10  defendant's breach under the contract; and (4) damages.  *Kennedy Funding, Inc. v.*

11  *Chapman*, No. 09-cv-01957 RS, 2010 U.S. Dist. LEXIS 60475, at *18 (N.D. Cal. June 18,

12  2010) (citing *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1992)); *see*

13  *also, Bank of Sierra v. Kallis*, 2006 WL 3513568, at *7 (E.D. Cal. Dec. 6, 2006) (breach of

14  a written guarantee is a contractual cause of action and requires proof of the same elements

15  as breach of contract).

16         Here, McMillan has alleged facts sufficient to establish a breach-of-guarantee claim

17  against Traci Pelayo.  McMillan alleges that Traci Pelayo breached an agreement in the

18  form of a personal guarantee, a copy of which McMillan also attached to the complaint.

19  Dkt. No. 1 at 31.  According to McMillan, Traci Pelayo "jointly, severally and individually

20  guaranteed and promised to pay McMillan for all indebtedness of the AmeriCom

21  Defendants to McMillan."  *Id.* at ¶ 39.  Indeed, the terms of the personal guarantee state "I

22  hereby personally, individually and unconditionally guarantee payment of whatever

23  amount, which at any time shall be owing to [McMillan] on account of goods and services

24  and delivered, after the date thereof."  *Id.* at 31.  McMillan alleges that it performed under

25  the contract by submitting invoices and that Traci Pelayo breached her guarantee by failing

26  to pay McMillan as promised.  *Id.* at ¶ 38-41.  McMillan alleges that it suffered damages in

27  the amount of at least $308,459.40 because of Traci Pelayo's breach.  *Id.* at ¶ 41.

28         Accepting all factual allegations as true, McMillan has adequately demonstrated a

United States District Court
Northern District of California

substantial likelihood of success on the merits of its breach-of-guarantee claim.

### d.   Breach of Promissory Note Against AmeriCom and Justin Pelayo

The elements of a breach of contract under California law are "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

Here, McMillan alleges that AmeriCom and Justin Pelayo breached an agreement to provide payment for construction services.  The terms of the promissory note stated that AmeriCom or Justin Pelayo would pay McMillan monthly installments of $9,176.93.  Dkt. No. 1 at ¶ 44.  McMillan alleges that it performed as required under the promissory note. *Id.* at ¶ 45.  According to the complaint, AmeriCom and Justin Pelayo breached the promissory note by failing to pay McMillan as promised, resulting in damages to McMillan of at least $301,873.25 (the principal balance on the promissory note). *Id.* at 46.

Accepting all factual allegations as true, McMillan has adequately demonstrated a substantial likelihood of success on the merits of its breach-of-contract claim against AmeriCom and Justin Pelayo based on the promissory note.

### 3.  Sum of Money at Stake

The fourth factor weighs in favor of default judgment for McMillan.  Under this factor, "the Court must consider the amount of money at stake in relation to the seriousness of [d]efendant's conduct." *Dr. JKL Ltd., v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) (internal quotation marks and citation omitted).  "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Walters v. Statewide Concrete Barrier, Inc.*, No. 04-cv-02559 JSW (MEJ), 2006 WL 2527776, at *4 (N.D. Cal. 2006).  In determining if the amount at stake is reasonable, the Court may consider a plaintiff's declarations, calculations, pay stubs, and other documentation of damages. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-cv-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. 2007).

Here, plaintiff seeks a maximum of $389,930.39 from AmeriCom (consisting of

United States District Court
Northern District of California

1   $308,459.40 in principal, plus $62,490.49 in prejudgment interest, and $18,980.50 for

2   attorneys' fees and costs).  Dkt. No. 37 at 2.  Additionally, McMillan seeks to hold Traci

3   Pelayo jointly and severally liable to the extent of $378,884.48 (consisting of $308,459.40

4   in principal, plus $70,425.08 in prejudgment interest), and Justin Pelayo jointly and

5   severally liable to the extent of $340,851.82 (consisting of $301,873.25 in principal, plus

6   $19,998.07 in prejudgment interest, and $18,980.50 for attorneys' fees and costs).  *Id.*

7   McMillan concedes that its total amount of recovery is limited by its actual damages of

8   $389,930.39.  *Id.*

9          The Court finds that the amount at stake, though significant, is reasonably

10   proportionate to the harm caused by defendant's breach.  *See Canadian Nat. Ry. Co. v.*

11   *Phoenix Logistics, Inc.*, No. 11-cv-04589 EMC, 2012 WL 1476978, at *2 (N.D. Cal. 2012)

12   (finding default judgment warranted where plaintiff's damages were "limited to damages

13   that would be reasonably expected to put Plaintiff in the same position had Defendant

14   fulfilled its contractual obligations"); *but cf. Truong Giang Corp. v. Twinstar Tea Corp.*,

15   No. 06-cv-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007) ("Default

16   judgment is disfavored where the sum of money at stake is too large or unreasonable in

17   light of defendant's actions.").

18          The Court also finds the prejudgment interest that McMillan seeks reasonable.  As

19   to the subcontract agreement with AmeriCom, McMillan seeks a prejudgment amount of

20   15 percent annually on its compensatory damages based on New Mexico law, which

21   allows prejudgment interest in the amount of 15 percent annually in cases on money due

22   by contract.  Dkt. No. 27-1 at 20; N.M. Stat. Ann. § 56-8-3.  For the Traci Pelayo

23   guarantee agreement, McMillan seeks a prejudgment amount of 18 percent annually on the

24   balance due.  Dkt. No. 27-1 at 20.  The Court notes that usury law in California limits

25   interests rates on a loan or forbearance to the higher of either 10 percent, or five percent

26   above the interbank rate charged by the Federal Reserve Bank of San Francisco.  Cal.

27   Const. art. XV, § 1.  This case, however, involves debtor Traci Pelayo's voluntary default,

28   which, under state law, renders the agreement not subject to usury law.  *See Southwest*

*Concrete Prods. v. Gosh Constr. Corp.*, 51 Cal.3d 701, 706 (1990) ("[A] debtor cannot bring his creditor to the penalties of the Usury Law by his voluntary default in respect to the obligation involved where no violation of law is present at the inception of the contract.") (quoting *Sharp v. Mortgage Sec. Co.*, 215 Cal. 287, 291 (1933)) (internal quotation marks omitted); *see also Chevron TCI, Inc. v. Carbone Properties Manager, LLC*, No. 08-cv-00782 JCS, 2009 WL 929060, at *7 (N.D. Cal. Apr. 3, 2009) (discussing exceptions to usury law application under California law).  Finally, as to the AmeriCom and Justin Pelayo promissory note, the Court also finds the much lower 6 percent per annum interest rate specified in the agreement reasonable.

### 4.  Possibility of a Dispute of Material Fact

The fifth *Eitel* factor—possibility of a dispute concerning the material facts—also weighs in favor of default judgment.  Because the defendants have not made an effort to challenge the complaint, there is nothing to suggest that a dispute in the facts exists.  *See Transamerica Life Ins. Co. v. Estate of Ward*, No. 11-cv-00433 JAM (EFB), 2011 WL 5241257, at *4 (E.D. Cal. 2011) (finding that "there is a very low likelihood that any genuine issue of fact exists" because "the court [assumes] the truth of the well-pleaded facts in the complaint following the clerk's entry of default"); *see also W. Reserve Life Assur. Co. of Ohio v. Canul*, No. 11-cv-07151 AWI (JLT), 2012 WL 844589, at *3 (E.D. Cal. 2012) ("[T]here is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts all allegations in Plaintiff's Complaint as true and (2) Defendant has not made any effort to challenge the Complaint or otherwise appear in this case.").

### 5.  Excusable Neglect

The sixth *Eitel* factor—whether the default was due to excusable neglect—also weighs in favor of default judgment.  Excusable neglect is an equitable concept and "takes account of factors such as 'prejudice, the length of the delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the [defendant], and whether the [defendant] acted in good faith.'"  *TCI Grp.*

United States District Court
Northern District of California

*Life Ins. Plan v. Knoebber*, 224 F.3d 691, 696 (9th Cir. 2001) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993)).  Generally, courts will not find a defendant's failure to participate excusable where the defendant has been properly served and has notice of the entry of default and the motion for default judgment.  *Shanghai Automation Instrument*, 194 F. Supp. 2d at 1005.

Here, the defendants were all properly served with the summons, complaint, and the motion for default judgment.  There is presently no evidence before the Court that would suggest that default was due to excusable neglect.  Thus, this factor weighs in favor of granting default judgment against the defendants.

### 6.  Policy favoring a decision on the merits

Finally, there is a strong policy favoring decisions on the merits that weighs against entering default judgment.  *Eitel*, 782 F.2d at 1472.  The existence of Federal Rule of Civil Procedure 55(b), however, shows that this policy is not dispositive.  *Kloepping v. Fireman's Fund*, No. 94-cv-02684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).  And a defendant's failure to appear makes a decision on the merits impracticable, if not impossible.  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (internal citation and quotation marks omitted).  Given AmeriCom's, Traci Pelayo's, and Justin Pelayo's failure to respond to this action, a decision on the merits is impractical in this case.  *W. Conference of Teamsters Pension Plan v. Jennings*, No. 10-cv-03629 EDL, 2011 WL 2609858, at *4 (N.D. Cal. June 6, 2011).

In light of the other factors in favor of default judgment, this policy factor is not dispositive and the Court finds that, on the balance, the *Eitel* factors weigh in favor of entering default judgment against AmeriCom, Traci Pelayo, and Justin Pelayo.  *See Transamerica Life Ins.*, 2011 WL 5241257, at *4 (finding that the policy favoring decisions on the merits does not by itself preclude entry of default judgment).

### C.    Damages

#### 1.  Principal and Prejudgment Interest

McMillan has the burden of "proving up" its damages.  *See Bd. of Trs. of the*

1    *Boilermaker Vacation Trust v. Skelly, Inc.*, No. 04-cv-02841 CW, 2005 WL 433462, at *2

2    (N.D. Cal. 2005) ("Plaintiff has the burden of proving damages through testimony or

3    written affidavit.").  "It is well settled that a default judgment for money may not be

4    entered without a hearing unless the amount claimed is a liquidated sum or capable of

5    mathematical calculation."  *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

6         Here, the Court finds that McMillan, by providing the AmeriCom subcontract

7    agreement, as well as evidence of invoices detailing the unpaid amounts, has sufficiently

8    proven its actual damages under the contract in the amount of $308,459.40 in principal,

9    plus $62,490.49 in prejudgment interest, for a total of $370,949.89.  Dkt. Nos. 1 at 11-29,

10   27-3 at 1-15.  Additionally, as already stated, Traci Pelayo is jointly and severally liable to

11   the extent of $378,884.48 ($308,459.40 in principal, plus $70,425.08 in prejudgment

12   interest), and Justin Pelayo is jointly and severally liable to the extent of $321,871.32

13   ($301,873.25 in principal, plus $19,998.07 in prejudgment interest).  The Court finds these

14   damages capable of calculation without a hearing.

15            **2.  Attorneys' Fees and Costs**

16        In addition, McMillan has sufficiently supported its claims for attorneys' fees under

17   the AmeriCom subcontract agreement and the Justin Pelayo promissory note.  The

18   AmeriCom subcontract agreement states that the "[p]revailing party in any dispute shall be

19   entitled to an award of its attorney's fees and costs incurred."  Dkt. No. 1 at 14 (Section

20   10.2).  AmeriCom's and Justin Pelayo's promissory note also states "Makers [Justin

21   Pelayo and AmeriCom], and each of them, agree to pay reasonable attorney's fees, costs,

22   and expenses incurred in any attempt to enforce this Note . . . ."  Dkt. No. 1 at 34

23   (paragraph 6 entitled "Collection Costs").

24        To determine a reasonable attorneys' fee, or "lodestar," the starting point is the

25   number of hours reasonably expended multiplied by a reasonable hourly rate.  *See Hensley*

26   *v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Court, in considering what constitutes a

27   reasonable hourly rate, looks to the prevailing market rate in the relevant community.

28   *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

United States District Court
Northern District of California

1    Here, McMillan's attorney Patricia Walsh submitted a sworn declaration accounting

2  for hours and costs spent on this litigation through the time just before filing the default

3  judgment motion.  Dkt. Nos. 27-4 (declaration), 27-5 (billing entries and draft bill for

4  time).  The declaration and exhibits account for plaintiff's attorneys' time in sufficient

5  detail, and given the nature of the claims and motions filed, the Court finds the total

6  claimed hours spent on this case to be reasonable.  Dkt. No. 27-5 (totaling approximately

7  53 hours and $721.50 in costs).

8    As to the hourly rate, Patricia Walsh attests that her hourly rate in 2013 was $375,

9  and in 2014, $385.  Dkt. No. 27-4 at ¶¶ 13-14.  She also attests that the hourly wages of the

10  other attorneys working on the case, Michael M. Lum and Deborah L. Goodman, were

11  $355 and $315, respectively.  *Id.*  Patricia Walsh has practiced law since 1985; Michael M.

12  Lum since 2001; and Deborah Goodman since 2011.  The billing invoices establish that

13  McMillan incurred $18,259.00 in fees.

14    The Court finds the hourly rate to be reasonable in this case and awards a total of

15  $18,980.50 in attorneys' fees and costs.  Because it is the AmeriCom subcontract

16  agreement, and AmeriCom's and Justin Pelayo's promissory note that provides for the

17  recovery of attorneys' fees and costs, the Court holds AmeriCom and Justin Pelayo jointly

18  and severally liable as to this $18,980.50 amount.

19  //

20

21

22

23

24

25

26

27

28

**IV.   CONCLUSION**

The Court recommends that the default judgment be GRANTED as to McMillan's claims for breach of contract, common counts, breach of guarantee, and breach of promissory note.  Accordingly, the Court recommends that damages be awarded to McMillan in the maximum amount of $389,930.39 from AmeriCom (consisting of $308,459.40 in principal, plus $62,490.49 in prejudgment interest, and $18,980.50 for attorneys' fees and costs), with Traci Pelayo jointly and severally liable to the extent of $378,884.48 (consisting of $308,459.40 in principal, plus $70,425.08 in prejudgment interest), and Justin Pelayo jointly and severally liable to the extent of $340,851.82 (consisting of $301,873.25 in principal, plus $19,998.07 in prejudgment interest, and $18,980.50 for attorneys' fees and costs).

Any party may object to this recommendation within 14 days.  Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated:  June 30, 2015

_____

NATHANAEL M. COUSINS
United States Magistrate Judge